PICKETT, Judge.
This is a suit for damages for personal injuries received by plaintiff while a guest passenger in an automobile owned and driven by Charles McCree and. insured by defendant, Travelers Insurance Company. From an adverse judgment plaintiff appeals devolutively.
The essential issue concerns the defense that the plaintiff was guilty of contributory negligence because of his voluntarily riding with McCree whom he knew, or should have known, was under the influence of intoxicating liquor.
The defendant, Charles McCree, testified that on Sunday, March 7, 1971, at about 10:30 A.M., he met his wife, the plaintiff, Donald Ray Magee and his wife, Herschel Middleton, and Edward Thompson at the Plantation Club, near Sun, Louisiana. They remained at the Plantation Club about two hours during which time they consumed about three pints of Vodka and two, or three, six packs of Schlitz beer. Ester Magee, wife of the plaintiff, testified that she and her party had been at the Plantation Club about twenty or thirty minutes before Charles McCree arrived. McCree first went to the bar, and later joined them at a table, and remained with them about two hours. Edward Thompson said he went to the Plantation Club with Magee. He saw McCree drink some beer. He said six of them drank about two six packs of beer while he was there. The plaintiff Magee said he was with the party at the Plantation Club. They ordered two six packs of Schlitz beer (twelve cans of twelve ounces each of beer). He admitted he drank two beers. Magee admitted that he saw McCree come in the Club, and go to the bar, and saw him with a beer in his hand. McCree later came to their table and they gave him two beers. He said while McCree was in the Club, he was arrested for fighting. He said a woman called McCree an objectionable name, “ . . . and he hauled off and slapped her, and that is when the police walked in *589 and caught them, Sun police.” McCree was placed in jail, and Magee went with the party to secure his release.
The record shows that after McCree was released from jail, the party, including Ma-gee, returned to the Club. But soon thereafter they left in McCree’s Toyota automobile,' with McCree driving. The plaintiff’s wife was seated on the right side of the front seat; Mrs. McCree was seated in the middle of the front seat. The plaintiff was on the right side of the rear seat, and Herschel Middleton was on the left side of the back seat. Middleton was in such an intoxicated condition that he fell asleep in the car. With his guest passengers seated as above mentioned, McCree drove his small automobile northerly toward Bogalu-sa along Highway 21, at a speed of fifty to fifty-five miles per hour. When he entered a curve just south of the city limits of Bogalusa on Louisiana Highway 21, he suddenly lost control of the car and it turned over. McCree described the occurrence of the accident as follows:
“I didn’t hit a thing. All I told them, I said, ‘You all better watch it because I think this thing is fixing to flip,’ because when I came in the curve, I reckon by having so much heavy weight, I think one of my tires or something must have been low, I don’t know what it were, when I came in that curve, it started to flip. I tried to hold it and I couldn’t. It just started flipping.”
McCree said he had been driving straight until he came to the curve in the road. The plaintiff, Magee and his wife, Ester Magee, both testified that McCree was not speeding, and that there was nothing wrong with the way McCree was driving, prior to the accident.
Trooper Clarence Wagner, Jr., of the Louisiana State Police, investigated the accident. Upon arriving at the scene of the accident, he observed that the McCree vehicle had turned over several times in the middle of the road and was lying on its side facing the opposite direction to which it was traveling. He interviewed the driver, McCree, and the other occupants of the vehicle. He said there was a strong odor of alcohol about the occupants. He observed that McCree’s speech was slurred, he had a “thick tongue”, and he smelled strongly of alcohol. It was his opinion that McCree was drunk, and he carried him to the Bogalusa City Police Station where Lieutenant Billy Gill gave him the electronic toximeter alcoholic test. He was present while the test was made, and saw the result of the test. The test showed .16 which he said indicated McCree was intoxicated. Lieutenant Billy Gill testified that he administered the alcoholic test to Charles McCree, at the request of State Trooper Wagner. The final reading of the test was .16, which was conclusive that the subject was legally drunk.
With this review of the evidence in mind, let us examine the law and jurisprudence. In Grayson v. Allstate Insurance Company, 141 So.2d 101, this Court cited with approval Otis v. New Orleans Public Service, Inc., 127 So.2d 197, wherein the Court of Appeal for the Fourth Circuit stated:
“It is well settled in our jurisprudence that a guest passenger cannot recover for injuries received as a result of his driver’s negligence where that driver has had a sufficient quantity of intoxicants to make him lose normal control of his mental and physical faculties and cause such faculties to be materially impaired and where the guest passenger knew or should have known of the driver’s condition and yet voluntarily rode with him: Dowden v. Bankers Fire & Marine Ins. Co., La.App., 124 So.2d 254; McAllister v. Travelers Ins. Co., La.App., 121 So.2d 283; Lyell v. United States Fidelity & Guaranty Co., La.App., 117 So.2d 290; Woods v. King, La.App., 115 So.2d 232; Elba v. Thomas, La.App., 59 So.2d 732.
“ * * * Under our more recent jurisprudence as set forth in the cited cases, it is no longer necessary to show that *590 the driver was drunk. The fact that he had a sufficient quantity of intoxicants to make him lose normal control of his mental and physical faculties and cause such faculties to be materially impaired is sufficient. We therefore hold that the action of a guest passenger in voluntarily riding with a driver under the influence of intoxicants to an extent sufficient to make him lose normal control of his mental and physical faculties and to cause such faculties to be materially impaired, whose condition was known or should have been known to the guest passenger, constitutes not only an assumption of the risk in any claim against his host but also independent, contributory negligence sufficient to bar his recovery from third persons in any case where the host driver was guilty of negligence which was a proximate cause of the accident.”
In the case of Jones v. Continental Casualty Company of Chicago, Ill., 246 La. 921, 169 So.2d 50 our Supreme Court, citing Otis v. New Orleans Public Service, Inc., supra; and Grayson v. Allstate Insurance Company, supra, and other cases, approved prior jurisprudence to the effect that it is not necessary to show that the driver is drunk. It is sufficient if the evidence shows that the driver had a sufficient quantity of intoxicants to make him lose normal control of his mental and physical faculties and cause such faculties to be materially impaired.
Taking into consideration all of the evidence, and particularly the alcoholic tests administered by Lieutenant Gill of the Bogalusa Police Department, the observations made by Lieutenant Gill and Trooper Wagner of the appearance and behavior of McCree immediately after the accident, as well as the history of McCree’s drinking over a period of two hours or more, immediately prior to the occurrence of the accident, we find it more probable than not that McCree’s intoxication was sufficient to slow his reflexes and otherwise impair his faculties to the extent that it was the proximate cause of the accident. Marcotte v. Travelers Insurance Company, 258 La. 989, 249 So.2d 105.
The next question is whether Ma-gee knew or should have known that Mc-Cree was intoxicated. The plaintiff was in the Plantation Club when McCree arrived. He saw McCree go to the bar, and saw him drinking Vodka and beer. He saw him consume at least two beers at the table. The plaintiff said McCree was at the bar more than he was at the table. Having observed McCree drinking Vodka and beer for approximately two hours, the plaintiff obviously knew, or should have known, that McCree’s faculties were materially impaired.
Neither McCree, nor any of the other witnesses, gave any realistic reason for his vehicle overturning. McCree said he hit nothing, but that he came to a wave in the road in the curve,' lost control of the vehicle and it turned over. Trooper Wagner who investigated the accident, did not mention any defect in the road, nor was there any other evidence of a defect in the road. After a thorough consideration of all the evidence, we are convinced that when defendant McCree reached the curve in the road where the accident occurred, his faculties were so impaired because of the alcoholic beverages that he had consumed that he lost control of his vehicle and wrecked it.
Therefore, we conclude McCree was intoxicated; that plaintiff knew or should have known he was intoxicated; and that the intoxication of McCree caused or contributed to the accident in which plaintiff sustained his injuries. We conclude the plaintiff was contributorily negligent because knowing the driver’s condition, he voluntarily rode with him. The Trial Court properly rejected the demands of the plaintiff.
*591 For the reason assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.